**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DENNIS ELLIS,**

                          **Plaintiff,**                          **1:09-cv-0810
                                                                  (GLS\RFT)**

              **v.**

**COHEN & SLAMOWITZ, LLP,**

                          **Defendant.**
_____
**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Anthony J. Pietrafesa          ANTHONY J. PIETRAFESA,
210 Bell Court                           ESQ.
Schenectady, NY 12303

**FOR THE DEFENDANT:**
Smith, Sovik Law Firm                    DANIEL R. RYAN, ESQ.
250 South Clinton Street
Suite 600
Syracuse, NY 13202-1252

**Gary L. Sharpe
District Court Judge**


## MEMORANDUM-DECISION AND ORDER

### I. Introduction

        Plaintiff Dennis Ellis brings this action against defendant Cohen &

Slamowitz, LLP (C&S) under the Fair Debt Collection Practices Act

(FDCPA)[1] and New York General Business Law § 349.  (Compl., Dkt. No. 1.)  Pending is C&S's motion to dismiss.  (Dkt. No. 8.)  For the reasons that follow, C&S's motion is denied.

## II.  Background

On January 12, 2009, defendant C&S sent a letter to plaintiff Dennis Ellis demanding that he pay $6,370.35 for an alleged debt owed to Target National Bank.  (*See* Compl. ¶ 6, Dkt. No. 1.)  C&S advised Ellis that Target referred Ellis's account to its law office for collection.  (*See* Letter One, Dkt. No. 1:2.)  In the letter, C&S also provided Ellis with a "Validation Notice," which stated: (1) that unless Ellis disputed the validity of the debt within thirty days, the debt would be assumed valid; and (2) that if Ellis disputed any portion of the debt, S&C would obtain and mail a verification of the debt to him.  (*See id.*)

On January 29, 2009, C&S sent Ellis a second letter entitled "Tax Season Special Discount."  (*See* Letter Two, Dkt. No. 1:3.)  In this second letter, C&S stated that it was offering Ellis "a savings of 30% off on the outstanding balance owed on [his] account ... [and] will accept the reduced sum of $4,490.75 if [he] pay[s] this amount on or before February 25,

---

[1] 15 U.S.C. § 1692, *et seq.*

2

2009." (*Id.*)  In a third letter, also dated January 29, 2009, C&S advised

Ellis that "[o]ur client has authorized us to commence suit against you."

(Letter Three, Dkt. No. 1:4.)  This third letter does not mention either of the

previous two letters or Ellis's ability to seek validation of the debt or the tax

season discount offer.

Following the receipt of these letters, Ellis filed suit against C&S on

July 16, 2009, under the FDCPA and New York General Business Law

based on allegations that the contents of the individual letters, the

sequence of the letters, and the letters in the aggregate were deceptive

and misleading and overshadowed and contradicted his validation rights.

(*See* Compl. ¶¶ 16-36, Dkt. No. 1.)  As a result, Ellis seeks actual and

statutory damages, attorneys' fees and costs, a declaration that C&S

violated the FDCPA and New York General Business Law, and an

injunction preventing C&S from sending letters offering a discount without a

notice of the attendant tax ramifications.  (*See id.* at 10.)  On September 3,

2009, C&S moved to dismiss each of Ellis's claims under FED. R. CIV. P.

12(b)(6).  (*See* Dkt. No. 8.)

### III.  Standard of Review

Rule 12(b)(6) provides that a cause of action shall be dismissed if a

3

complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted).  Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor." *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  Rather, the claim must be "plausible on its

4

face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---

U.S. ----, 129 S.Ct. 1937, 1949 (2009) (citation omitted).  Thus, the

plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully," *id.*, but "does not impose a probability

requirement," *Twombly*, 550 U.S. at 556.

## IV.  Discussion

### A.    The Fair Debt Collection Practices Act

The FDCPA establishes a general prohibition against the use of

"false, deceptive, or misleading representation or means in connection with

the collection of any debt."  15 U.S.C. § 1692e.  Section 1692e includes

sixteen subsections that set forth a non-exhaustive list of practices that fall

within this ban.  *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.

1993).  The subsections relevant to the pending motion include:

> (2) The false representation of -- (A) the character, amount, or
> legal status of any debt; or any services rendered or
> compensation which may be lawfully received by any debt
> collector for the collection of a debt.
>
> ....

5

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

....

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  However, since the list provided by § 1692e is not exhaustive, a debt collection practice may still be "false, deceptive, or misleading" even if it does not fit within one of § 1692e's subsections.  *See Clomon*, 988 F.2d at 1318.

Furthermore, under 15 U.S.C. § 1692f, a debt collector is forbidden from using "unfair or unconscionable means to collect or attempt to collect any debt."  In addition, pursuant to the obligations imposed by 15 U.S.C. § 1692g, the debt collector is required to send the consumer a written "validation notice," which affords the consumer thirty days to dispute or verify the debt.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010).  And while debt collectors may continue collection activities during the validation period if the debt is not disputed, such activities "must not 'overshadow' or 'contradict' the validation notice."  *Id.* at 135 (citations omitted).

6

To determine whether a debt collection practice is deceptive or misleading or overshadows or contradicts a validation notice, that practice must be viewed objectively from the perspective of the "least sophisticated consumer." *Clomon*, 988 F.2d at 1318; *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).  The basic purpose of this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon*, 988 F.2d at 1318.  However, "in crafting a norm that protects the naive and the credulous ... courts have carefully preserved the concept of reasonableness" without extending FDCPA protection to "bizarre or idiosyncratic interpretations" of collection notices and other practices.  *Id.* at 1319-20 (citation omitted).  Thus, as the Second Circuit has explained, the least-sophisticated consumer standard functions to ensure the protection of all consumers, while also protecting debt collectors against liability for unreasonable interpretations of collection notices.  *See id.*

The FDCPA is a strict liability statute.  *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993).  Accordingly, the consumer need not show intentional conduct by the debt collector.  *See Ellis*, 591 F.3d at 135.

7

### 1.    Failure to Inform of Potential Tax Consequences

In his first cause of action, Ellis argues that C&S's second letter offering to discount or forgive $1,924.61, or 30% of the debt, failed to notify him of the requirement under the Internal Revenue Code that any amount forgiven in excess of $600 must be reported as income on his federal tax return.  And by failing to notify Ellis of potential tax consequences, Ellis contends that C&S violated the FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f, by seeking to deceive and mislead him into accepting the discounted amount.[2]  (*See* Compl. ¶ 17, Dkt. No. 1.)  C&S counters that in addition to there being no case law to support such a claim, to impose such a duty on debt collectors would stretch the FDCPA beyond its intended reach.  (*See* Def. Mem. of Law at 3-5, Dkt. No. 8:9.)

Although the cases Ellis relies on are not as "analogous" as he suggests,[3] and while the court shares C&S's concerns about whether this

_____

[2]The parties do not dispute that Ellis is a "consumer" under 15 U.S.C. § 1692a(3) and that C&S constitutes a "debt collector" under 15 U.S.C. § 1692a(6).

[3]*See Seabrook v. Onondaga Bureau of Med. Econ., Inc.*, 705 F. Supp. 81, 84-85 (N.D.N.Y. 1989) (finding a per se violation of § 1692e(5) where debt collector's threat to garnish consumer's wages did not accurately reflect New York State garnishment law as it related to the consumer's income status); *Arroyo v. Solomon & Solomon, P.C.*, No. 99-CV-8302, 2001 WL 1590520, at *13 (E.D.N.Y. Nov. 16, 2001) (finding a violation of § 1692e where debt collector misrepresented consumer's rights under the Higher Education Act by repeatedly demanding more from the consumer than she could reasonably afford).

specific practice was intended to be covered by the FDCPA, the court nonetheless concludes that Ellis has adequately alleged a cause of action under § 1692e.  As outlined in Ellis's submissions, (*see* Pl. Resp. Mem. of Law at 2-4, Dkt. No. 9:9; Pietrafesa Decl. ¶¶ 13-17, Dkt. No. 9), the amount of debt being forgiven may be taxable under 26 U.S.C. § 61(a)(12), whereby the taxes levied specific to that additional taxable income would in essence diminish the actual net value of the discount offered by the debt collector.  Thus, the discount offered in C&S's second letter may constitute a deceptive or misleading collection practice by failing to warn the consumer that the amount forgiven could affect his tax status.  Accordingly, S&C's motion to dismiss Ellis's first cause of action is denied at this juncture.

## 2.    Threat to Sue

In his second cause of action, Ellis alleges that C&S's third letter was intended to mislead and deceive him into paying the debt by falsely threatening litigation without the intention or authority to do so, in violation of § 1692e.  C&S responds that the third letter neither threatened further action nor indicated an intention to file a lawsuit, but merely indicated that C&S was authorized to do so.  (*See* Def. Mem. of Law at 14-15, Dkt. No.

8:9.)  Specific to Ellis's allegation that C&S was not authorized to file suit,

C&S offers an affidavit of Leandre John, the managing attorney at C&S, to

refute that allegation.  (*See* Ryan Decl., Ex. F, John Aff., Dkt. No. 8:8.)

Preliminarily, as to C&S's proffered affidavit, the court declines to

consider it in the current context.[4]  As we are in the preliminary throes of

litigation, such that the parties have not yet engaged in any discovery, the

court is unwilling to convert C&S's motion to dismiss into one for summary

judgment.[5]  Accordingly, insofar as Ellis alleges that C&S expressed its

authority to commence a lawsuit against him without actually being so

authorized, the court finds that Ellis has adequately alleged a claim that is

plausible on its face.

---

[4]In ruling on a motion to dismiss, "the district court must limit itself to a consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference."  *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted).  Still, a document that is not incorporated by reference may nevertheless be considered "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).  And even though the purpose of this restriction is to provide the plaintiff with notice of and an opportunity to respond to the documents being considered, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough," *Chambers*, 282 F.3d at 153 (citation omitted).

[5]Where material outside the complaint is presented in support of a Rule 12(b)(6) motion, the court has two options: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under FED. R. CIV. P. 56 and afford all parties the opportunity to present supporting material."  *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (citations omitted); *see also* FED. R. CIV. P. 12(d).

Alternatively, Ellis alleges that the third letter constituted a threat to take unintended action in violation of § 1692e(5). To determine whether language can be construed as threatening legal action such that it violates § 1692e(5), courts must consider a number of factors. *See Berger v. Suburban Credit Corp.*, No. 04 CV 4006, 2006 WL 2570915, at *4 (E.D.N.Y. Sept. 5, 2006). Among these factors, a court should "consider whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action." *Id.* at *5; *see, e.g.*, *Spira v. Ashwood Fin., Inc.*, 358 F. Supp.2d 150, 160 (E.D.N.Y. 2005) (finding debt collector's statement that it would pursue "every means available" constituted a threat that it did not intend to carry out); *Kapeluschnik v. Leschack & Grodensky, P.C.*, No. 96-CV-2399, 1999 WL 33973360, at *7 (E.D.N.Y. Aug. 26, 1999) (finding no violation in absence of language "implying or conveying a threat to take legal action"); *Madonna v. Acad. Collection Serv., Inc.*, No. 3:95 CV 00875, 1997 WL 530101, at *6-9 (D. Conn. Aug. 12, 1997) (finding notice stating that the creditor "may choose to pursue legal action" does not constitute a threat of legal action); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727 (D. Conn. 1990) (finding notice stating that "legal action will

11

be recommended" does not evidence an intent or ability to litigate). Ultimately, a plaintiff must demonstrate that "the least sophisticated consumer could reasonably misinterpret the challenged language or interpret the language to mean that defendant was going to initiate action which it never actually intended." *Berger*, 2006 WL 2570915, at *4; *see, e.g.*, *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (affirming district court's finding that "least sophisticated consumer" could interpret debt collector's language "your account will be transferred to an attorney if it is unpaid after the deadline" as a threat of suit); *Tsenes v. Trans-Cont'l Credit & Collection Corp.*, 892 F. Supp. 461, 465 (E.D.N.Y. 1995) (finding that "least sophisticated consumer" could interpret debt collector's statement that if the consumer paid in full it would "withhold further action" as a threat to commence legal action).

For purposes of the pending motion, Ellis has sufficiently alleged that C&S's third letter may have constituted a threat of suit and that C&S did so without an intention to commence a lawsuit against Ellis.  Therefore, the court denies C&S's motion to dismiss Ellis's claim that C&S threatened to take action that it could not legally take or did not intend to take.  *See Bentley*, 6 F.3d at 63.

**3.     Right to Seek Validation**

Ellis additionally argues that by sending the second letter, which

would have allowed him to pay a discounted amount after the validation

deadline, and the third letter, which asserted C&S's authority to commence

a lawsuit, C&S confused and overshadowed Ellis's right to seek validation,

in violation of 15 U.S.C. § 1692f and 1692g.  (*See* Compl. ¶¶ 17, 19, Dkt.

No. 1.)

"A notice is overshadowing or contradictory if it would make the least

sophisticated consumer uncertain as to [his] rights."  *Russell*, 74 F.3d at 35.

In general, a complaint alleging a § 1692g violation will survive a motion to

dismiss if: "(1) the plaintiff pleads a contradiction between the demand

language and the validation language and (2) it is possible that the plaintiff

could prove that the contradiction would mislead the least sophisticated

consumer into disregarding his or her rights under the validation notice."

*Beeman v. Lacy, Katzen, Ryen & Mittleman*, 892 F. Supp. 405, 412

(N.D.N.Y. 1995) (denying motion to dismiss where a reasonable jury could

find that debt collector's request that the consumers pay immediately or

explain their failure to pay overshadowed and contradicted the validation

notice).  Still, some courts have found under limited circumstances that, as

a matter of law, additional language contained in the validation notice

offering a settlement of or discount on the debt does not overshadow or

contradict the validation notice.  *See, e.g.*, *Soffer v. Nationwide Recovery*

*Sys, Inc.*, No. 06-CV-435, 2007 WL 1175073, at *5 (E.D.N.Y. Apr. 19,

2007) (finding that settlement offer contained in validation notice requiring

payment prior to the expiration of the validation deadline date could not

overshadow the validation notice); *Omogbeme v. Risk Mgmt. Alternatives,*

*Inc.*, No. 01 CV 7293, 2003 WL 21909773, at *3 (E.D.N.Y. Aug. 4, 2003)

(finding that settlement offer contained in validation notice could not

overshadow the validation notice); *Harrison v. NBD Inc.*, 968 F. Supp. 837,

846-48 (E.D.N.Y. 1997) (finding that discount offer contained in validation

notice could not overshadow or contradict the validation notice); *but see*

*Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 527 (E.D. Pa.

1996) (finding that debt collector's language stating that he has been

retained "to file suit if necessary ... [and] may bring a lawsuit" and calling for

"immediate" payment contradicts the validation notice).

Here, the court concludes that the two subsequent letters sent by

C&S, either individually or in the aggregate, could lead a reasonable fact

finder to conclude that they overshadowed or contradicted the initial

14

January 12, 2009 validation notice.  For instance, the second letter could

have led the least sophisticated consumer to believe that the validation

deadline date had shifted from thirty days after the date Ellis received the

validation notice to February 28, thirty days after the discount offer was

made.  These facts are distinguishable from the facts in *Harrison*, where

the discount offer was included in the validation notice and operated under

the same thirty-day deadline.  *See Harrison*, 968 F. Supp. at  846.  And as

to the third letter, there is no question that a reasonable jury could conclude

that the letter advising Ellis of C&S's authority to "commence suit" could

overshadow or contradict the validation notice.  *See, e.g.*, *Cavallaro v. Law*

*Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1155 (E.D.N.Y. 1996)

(holding that a reasonable jury could find that debt collector's statement

that it "may commence and/or continue legal proceedings" during the

validation period overshadowed the validation notice); *Rabideau v. Mgmt.*

*Adjustment Bureau*, 805 F. Supp. 1086, 1094 (W.D.N.Y. 1992) (finding that

subsequent notices stating that debt must be paid immediately or within

five days "to avoid further collection measures" contradicted the validation

notice and could be interpreted to mean that the debt collector would file

suit); *cf. Ellis*, 591 F.3d at 136-37 (finding validation notice overshadowed

15

where debt collector serves consumer with process initiating lawsuit without clarifying that it does not affect the validation notice).  Therefore, for these reasons, the court concludes that Ellis has sufficiently alleged that C&S may have acted in a way that overshadowed or contradicted his validation rights.

### 4.    Plan to Mislead and Deceive

Ellis contends in his third cause of action that the three letters sent by C&S demonstrate a "calculated, well-designed plan" to mislead and deceive him into foregoing his right to validate or contest the debt and thereby pay the alleged debt, in violation of 15 U.S.C. §§ 1692e(10), 1692f, and 1692g.  (Compl. ¶ 20, Dkt. No. 1.)  Having already found that the second and third letters individually could have misled or deceived the least sophisticated consumer, and for reasons similar to those which would allow a reasonable jury to find that the sequence of letters may have been overshadowing or contradictory, the court concludes that the three letters in combination may have amounted to a misleading or deceptive collection practice in violation of the FDCPA.  Accordingly, C&S's motion to dismiss Ellis's third cause of action is denied.

### B.    New York General Business Law

In his fourth and fifth causes of action, Ellis asserts that the three letters and the second letter independently constitute materially deceptive and misleading practices or acts violative of N.Y. GEN. BUS. LAW § 349, and that he and others who have received and acted on such letters "have been damaged."  (Compl. ¶¶ 23-36, Dkt. No. 1.)

Under New York General Business Law, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State] are ... unlawful."  N.Y. GEN. BUS. LAW § 349.  "[A]s a threshold matter, plaintiffs claiming the benefit of section 349 ... must charge conduct of the defendant that is consumer-oriented."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995).  While the plaintiff need not show "a repetition or pattern of deceptive behavior," he must "demonstrate that the acts or practices have a broader impact on consumers at large," and were not merely aimed at an individual private dispute.  *Id.*

Once the plaintiff proves that the underlying relationship involved a "typical consumer transaction," he must establish a prima facie case under § 349.  *Id.* (citing *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)).  To make out a prima facie case, a plaintiff must show that the

17

defendant "engag[ed] in an act or practice that is deceptive or misleading in a material way and that [he] has been injured by reason thereof." *Id.* (citation omitted). Accordingly, under this two-pronged analysis, the plaintiff must demonstrate: (1) that the defendant's representations or omissions were "likely to mislead a reasonable consumer acting reasonably under the circumstances"; and (2) that the deceptive act or practice caused "actual, although not necessarily pecuniary, harm." *Id.* at 26; *see also Fava v. RRI, Inc.*, No. 96-CV-629, 1997 WL 205336, at *5 (N.D.N.Y. Apr. 24, 1997). Thus, unlike the least sophisticated consumer standard, a plaintiff alleging a § 349 claim must demonstrate that "a reasonable consumer would have been misled by the defendant's conduct." *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (citation omitted). However, justified reliance is not an element of a claim under § 349. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000); *see also Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26.

Here, it seems quite clear, and undisputed, that the acts Ellis alleges C&S engaged in were consumer oriented. *See Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp.2d 443, 449 (S.D.N.Y.

18

2004) ("[L]iability attaches primarily where a party's misrepresentations are boilerplate and have the potential to be repeated in order to deceive numerous similarly situated [consumers]." (citations omitted)). Furthermore, putting aside plaintiff's counsel's hyperbolic language, the court is satisfied that Ellis has adequately alleged a prima facie case under § 349.  While it is uncertain whether Ellis will be able to prove he suffered actual harm as a result of C&S's actions, this is not the stage for such an inquiry.  Accordingly, C&S's motion to dismiss Ellis's claims under N.Y. GEN. BUS. LAW § 349 is denied.

## V.  Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that S&C's motion to dismiss (Dkt. No. 8) is DENIED; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

IT IS SO ORDERED.

March 26, 2010
Albany, New York

United States District Court Judge

19